All right, staying with DuPage County, Mr. Fish. Good morning. Good morning, Your Honor. May it please the court, my name is David Fish and I represent the appellant plaintiff in this case, Anthony Simpkins. The district court's decision in this case was wrong. It should be reversed and we're asking that the court make a finding that Mr. Simpkins was in fact an employee under the Fair Labor Standards Act's economic realities test. The economic realities in this case are that number one, Mr. Simpkins worked for the defendants for more than a half decade. He did so on a full-time basis. He had no particular specialization. He was, according to them, their general handyman and he helped them out with whatever they needed from collecting quarters from laundry machines to taking out the trash. So let me, let me say, we're not usually finders of fact at this level. Why aren't you just arguing that there are disputed issues of fact on his status as either, on the one hand, an employee or on the other hand, an independent contractor? I mean, there are facts that would point in either direction. Ultimately, this is a legal conclusion as to employee status and I understand that but there's this bizarre language I'm concerned about the way, and this isn't your fault at all, about the way our court has expressed the standard of review. Usually when there's a legal conclusion and there are underlying facts that need to be developed before you can draw that legal conclusion, at summary judgment, you don't resolve the facts. At summary judgment, you ask whether a rational trier of fact could find them in a way favorable to the non-moving party. And I think the language in our opinions has been confused about that. There's talk of clear error review, which sounds like we are the trier of fact. So I wonder if you could talk about that for a minute. Sure. To the extent that there are facts in dispute, for instance, labels. There's a lot of disputes over labels. There's his own supervisor. Labels? Labels as to whether they called him an employee or an independent contractor. Yeah, I understand that, but... Our view is that doesn't matter. That's irrelevant. His own supervisor thought he was an employee, but ultimately that doesn't matter. There's an independent contract agreement. So here's the type of facts that are in dispute. They claim, did he go in and get his duties from a pile of work orders or did somebody tell him what to do? It doesn't matter. The Supreme Court in Goldberg versus Whitaker, that was the case with the people knitting at home and working whenever they wanted to, whether it was in the middle of the night. College industries. There was no oversight whatsoever over those workers. So whether Mr. Sumpkins got his work assigned from a pile of work orders or whether he he got it assigned from a supervisor, that doesn't matter. That's not a disputed issue of fact. The facts that are not in dispute, Your Honor, are that he worked for them for over half decade. He was paid on an hourly basis the entire time. And they come back on the other side with the two agreements that he signed. The second one, you know, with this sort of strange crossing out of the termination date and somebody writing in to be determined. He's getting paid by 1099s. He's taking income tax deductions from his 1099 income. So I'm not saying that that's dispositive either, but doesn't that have the feel of, you know, there's evidence on one side, there's evidence on the other side? It doesn't, Your Honor, and here's why. The Supreme Court said so. In the Tony and Susan Alamo Foundation case, the court said whatever beliefs the parties may have had don't matter. In that case, both the putative employer and the putative employee did not want employee status. They vehemently protested it. And the Supreme Court said that's not the standard. Whatever subjective beliefs, that doesn't matter. Because otherwise, an employer could just have somebody sign that contract waiving their rights. What matters here are the economic... But why is it just subjective beliefs? I mean, there's some people testified that he did decide on when he was going to come in. He largely followed the traditional work day, but not always. In Lawrence, in the Pickle Pickers, in this court's decision, it worked whenever they wanted to. They weren't even regulated at the employee level. The families in that case that oversaw the fields decided when to come in. The Supreme Court said it doesn't matter. They were working at home. Nobody knew when they were working. So whether he had to come in between 830 and 430, or he just did that every day almost for over five years... And he submits invoices to get paid. And he doesn't get employee benefits, right? He doesn't get health insurance. He doesn't get social security taxes with help from his paycheck. Well, for most of the time, they actually filled out his invoices for him, and it was an email account where he put in the time. But again, Your Honor, we have to look at the economic realities in this case. And what the courts have said over and over again is you don't look at the labels. And so how he filed his tax returns, that's not a factor in the economic realities test. Even the Department of Labor says so. Whether he had an independent contractor agreement, that doesn't matter. You look at the work he did. And if you look at the factors that this court have found to be dispositive, and if you look at what the Supreme Court has said is not dispositive, that's particularly relevant. But you know, in the work he did, I know he testified that something at the 99% level, he was using the materials and tools that they gave him. But all of these tax deductions suggest, and there is other evidence, there's testimony in the record, that he's using his own equipment a certain amount of the time. That's a factor. That's certainly a factor. But to get back to your point, Your Honor, which you originally asked me, even if the court were to find that one factor were to favor the defendants, or multiple factors, you have to look at all those factors in a nutshell. And this court has said... That's why I'm having problems. I mean, of course, I hate multi-factor tests anyway, but because they do this to us. But why isn't it up to a jury to decide how all those disputed facts here are not outcome determinative? What this court has said the most important factor is economic dependence. He was clearly economically dependent. They were his sole source of income for over five years. But what about our hypothetical of the lawyer who has one client? The lawyer's economic... But the lawyer's in private practice. The lawyer's not in-house. The lawyer has one, you know, pays the rent, supports me, kind of client. Right. And if that employee, like Mr. Simpkins, worked for them for five and a half years, he used their tools, it was his sole source of income, all those factors, he would become an employee. That's more of an in-house counsel. That is not an employee. So the facts that we have here, the sheer duration of the relationship, his sole source of income, you have to get back to those factors. And those factors are not in dispute. What's in dispute in this case is not... I mean, the both parties here agree the facts are not in dispute that are the We believe that the material facts did require an outcome for Mr. Simpkins in this case. But see, here's the problem. You say the two of you agree on all of the material facts, except you're here arguing to us that all of those material facts point in the direction of employee, unless they're going to say something that will stun me after reading their brief. At least in their brief, they say all of those material facts point in the direction of independent contractor. It can't be both. Well, let's talk about the facts that the Supreme Court has said matter. The facts that they keep turning to, Judge, are how he filed his tax returns, that he signed a contract. The Supreme Court in Rutherford said labels don't matter. An illustrative case is the Hopkins v. Cornerstone case from the Fifth Circuit from 2008. There, an employee was suing for wages. He had previously defended a sexual harassment case saying, I'm an independent contractor. I can't be liable. And the Fifth Circuit, in that case, said, reversed the district court, because the district court there found that he was essentially stopped from claiming it, just I think like the district court was essentially saying here with respect to his tax returns. And the Fifth Circuit said no. Two different standards. The FLSA standard is much broader than, in that case, it was the Title VII standard. And they recognized it's a quote-unquote semantic inconsistency to say, on one hand, you're an independent contractor, and then sue under the Fair Labor Standards Act and say you're something else. But nationwide insurance, the Supreme Court's decision, post-Larsen, makes clear that the FLSA is extraordinarily broad. We're not talking about the tax return standard. We're not talking about what he puts in a contract. Let's start with the plain language. The suffer or permit to work standard. That's the language in the statute. The district court didn't use that anywhere. It's in its opinion. And the defendants don't use that language anywhere in their brief. We need to get back to what the plain language of the statute is. And what relief is he looking for? Suppose you got your ruling that he's, that he's an employee. What else happens? Well then what's going to happen, Judge, is we would have, that we would go back to the district court and we would look at the amount of damages. The number of hours he worked, over 40 in a week. Right, and so they say, well he was actually paid more than the employees, maybe not a lot more, but he was paid somewhat more than the employees. Do we go and unravel his pay and try to figure out what it would have been if he'd been employee and how much of it, you know, actually would have been allocated to, you know, pension or health care or whatever? No, there's no set off like that in the FLSA, Judge. And in fact, almost every case, an employee that's being paid straight time, it may have been that the employer is paying somewhat of a higher hourly wage. But the employer's not in Social Security. Maybe the employer can have, you know, zero benefits. Some employers do that, but there's some things that are not optional. It just seems to me very difficult. Well, I think when you look at what the... Let me pile in once more. If an independent contractor is working for a particular company, and he elects not to work at any place else, that is, he rejects any possibility about other people, is he an employee? I think, again, you would look at what, at the six-factor test or the seven-factor test. But in the abstract, is that an indication of employee status? If they work exclusively for one employer, sure. Yeah, but they do it voluntarily. Sure, sure. I mean, that weighs in favor of it, but you'd have to look at how long he was working or she was working. It doesn't make any difference. The point I'm asking is, can I restrict my work as an independent contractor to work I like in a... So it's only one company I like. Well, I think you certainly could do that, but I don't think that's what happened here. I didn't suggest it. I was asking the abstract again. So the fact that you don't work for anybody else is a factor, but not a particularly important one. Well, I think with the duration, it's critical. The answer is yes or no. Well, I think it's... I think the fact that you're exclusively working for one employer, yes, that weighs in favor of employment status. It does. It's his decision that I will work exclusively for this because I don't want to take any other work. I think that suggests employee status. Yes. Okay. But again, you have to weigh the economic realities of the relationship, and the core facts in this case are not in dispute, and I keep coming back to them because they're so critical in this case. The core facts, length of employment, always paid on hourly wage set by the defendants, sole source of income for more than five years. This wasn't like he showed up and did work for a month. His sole source of income for more than five years, and no particular specialization. So when you look at all of those factors, they dictate only one outcome. Could I save my remaining time for a moment? Yes, you may. Yes, are you Mr. Fetty? Is that how you pronounce your last name? The floor is yours. Good morning, your honors. May it please the court. My name is Nick Fetty, F-E-D-D-E. I represent defendants Appelese, DuPage Housing Authority, and DHA Management Inc., who I will refer to collectively as DHA. Your honors, in short, this case involves an ex-project manager and contractor who entered into a contractual relationship with DHA, at first to perform gut rehab work, later maintenance work at Ogden Manor, who retained significant autonomy in the work that he performed, both pursuant to the contract and in practice. But you know, on the autonomy point, all people, you know, employees and independent contractors alike, have quite a bit of autonomy. And if I tell my assistant, you know, that I want, I want her to organize my case files in a certain way, I don't have to stand there and hover over her and say, you know, I don't like alphabetical order, I prefer numerical order or whatever, and why did you, you know, decisions are made by employees. Decisions are made by nurses about how to provide care. Decisions are made about people who are maintenance workers about which job to do first in the day. Oh, the toilet's overflowing, or maybe I need to re-clock the bathtub. Well, maybe I'd better address the overflowing toilet first. People, people make decisions constantly. Sure, your honor, and, and it's true that there is varying levels of autonomy, both in the field of true employees and in true contractors. I don't understand why this isn't disputed. I mean, I'll ask you the same question, because although he starts out with these two written contracts, the duration of the second one is ambiguous at best, and for the three-year look-back period, especially for FLSA, it's not at all clear to me that there is any contract. And it does seem on the economic realities of it, he is indistinguishable from an employee who's doing maintenance work. Your honor, we disagree that there's ambiguity as to the duration of the contract. The contract itself did not have a termination date. It had... So he's an employee at will. You could have told him anytime you wanted to, we don't want your services anymore. You were certainly not under a contractual obligation to keep him any longer. The contract just required a 30-day notice requirement for either side to terminate the contract. The contract had an expected, an expected completion date for his work at Ogden Manor. That expected completion date was changed from a specific date certain to be determined, dated by both plaintiff himself and... Right, and then it went on for another three years. Yes, your honor. It went on for a very long time. Which made sense, because the scope of the work changed from something that was very, had a very definite duration of time, which was the gut rehab work at the NSP Properties, to more of ongoing work doing maintenance. He's a day-to-day maintenance person, yes. Right, and your honor, we shouldn't belittle the degree of skill and experience required for him to manage that work. He was, like I said, an ex-project manager, an ex-carpenter. He was, and this is not disputed, that he would receive a list of work orders and it was largely up to him as to how he wanted to execute those work orders. It could be something... I mean, look, I'm all admiration for maintenance people. I wish I could do more of it, but it's, but that's the way a general handyman kind of person is going to work. A lot of places of work have an individual who they hire who can troubleshoot a whole variety of problems there, so that they don't have to go out and hire some more expensive, presumably independent company, you know, to, maybe it's just a leaky faucet, and so he's going to fix that So, I don't know, I'm concerned he's totally economically dependent on this, on DHA, DuPage Housing Authority people. He gets his job orders from them every day. They pay him. I don't know why there isn't at least enough to create a factual issue about his job status. Your honor, your comment about the fact that he did routine maintenance somehow suggesting he's an employee begs the question, does doing routine maintenance make somebody in and of itself an employee? A great number of companies have somebody on their staff to do that. Sure, your honor, and that may very well be. In this case, if you look at all of the Lortz and factors in addition to those, the other factors that we argue were relevant and supported... How many factors are we supposed to look at in order to do this? I mean, I've counted about 18 of them. Excellent question, your honor. Lortz and, you know, obviously the Seminole case establishing the factor test for the FLSA and intermitting workers classification there under says that there are six to begin with. It says that among the factors courts have considered are those six. Then we added like three more, you know, in a later case. It's just... Yeah, in fact, in Lortz in itself, it started with the Silk 5 and then it added from Rutherford, which was a case that came out the same year in  performed by the worker, were integral to the business. And then subsequent to that, Suskevich has looked at... This court in Suskevich looked at other factors like the absence or presence of agreements, the nature of the compensation. There is no set of factors that are exhaustive. And I think Berger makes... And your opponent basically tries to get out of all of this by saying that all of the things that you're relevant by the Supreme Court. So W-2 versus 1099 doesn't help us, according to him. And the existence of the name independent contractor on the agreement doesn't help us, according to him. So how do you respond to that? We agree. We agree that labels are not determinative. In fact... So what do you have other than labels? Sure, your honor. Certainly, we have an independent contractor agreement. Forgetting the name independent contractor agreement, that agreement sets forth in clear detail aspects of control as to what plaintiff will retain and what he won't retain. And specifically, it contains a clause, your honor, one moment, that said that plaintiff, in this case, under the terms of the agreement, retains sole and absolute discretion in the manner and means of carrying out his activities and responsibilities under the agreement. And then later, there was a clause mentioning that DHA could give him suggestions, but not instructions, as to the means and methods of plaintiff's work. And isn't there a ton of evidence in the record to show that that's not how things were done? There's a lot of evidence that he's directed as to what to do this day or that day. He's directed as to what kind of work he's supposed to do. These aren't just polite suggestions. Your honor, the facts in the light most favorable to him, could a trier of fact, drawing reasonable inferences, see this as the DuPage housing authority telling him what to do in the same way that you would tell any skilled employee what to do? You don't micromanage your skilled employees. If you're an employee of a law firm, you have a certain amount of leeway in the way you do things. Your honor, no I don't think that, in this case, the issue of control weighs in favor of plaintiff. Because if you look at those individual facts that, on a cursory glance, look like they're creating an issue of material fact, they're not outcome determinative and they don't actually contradict other facts. They're just additional facts that you have to look at in aggregate. Is your best fact that one line in the contract? No, your honor, it's that in reality, based on both declarations of the property manager and the head of maintenance, Barney Dahl and Don Demetri, and plaintiff's own deposition, they all indicate that when he was given any individual task, it could be anything that had to be done in one of the units. It was up to him and his devices how to do that, and they relied on his expertise to do so. Now if it was the case that Michelle Araya, which comes up in the plaintiff's brief, at one time or another would decide that certain work orders were more urgent than others, that doesn't detract from the fact that when it came to executing his work, he was left to his own devices. It doesn't dispute that fact, it just further clarifies the reality in the picture. And the picture was that once in a while there were urgent issues that had to be attended to first, and DHA made a plaintiff aware of that fact. That doesn't create a disputed fact. And it's your position that if he had said, well I actually don't really think that's urgent, I'm going to do something else instead, that would have been fine? I don't want to speculate on that issue, Your Honor, but I mean clearly, you know, he was doing, he was trying to do the job that he was contracted to do. I don't, it's not to my knowledge where there are cases where there was a dispute as to something that should be urgent or as an emergency nature or not. So I can't speculate on that issue, Your Honor, but to your point and going back to the terms of the contract, you know, he was, suggestions were only allowed to be made to him and not the final determination. How about a selection of tools he wanted to use? In terms of the selection of tools, Your Honor, we have a couple sources of information. One we have obviously, and mentioned in our in terms of tools, in quote, tools specifically over $7,000 total of investments. We have roughly up to $25,000 a year in his own investment in tools, equipment. But he's depreciating his truck. I mean he's being paid by 1099s. I have trouble faulting him for using the tax laws as they're available. The Internal Revenue Service wouldn't let him report this W-2 income since the paperwork shows it's 1099 income. So there he is, stuck with what you've said. I'm not sure what choice he had. And yeah, he was perfectly situated to, like you mentioned, take advantage of the fact he's an independent contractor. And our point here is this, you have two parties. I'm just saying you can't draw any inference about the employer's control over him in the economic realities from his decision under the tax laws, given that he's got 1099s to take deductions that are acceptable under 1099s. And let me be clear, Your Honor, our argument here is not that by virtue of taking advantage of the tax system, that that in itself is somehow indicative of the control factor here. We don't argue, and we would concede that the IRS... It's meaningless, as the Department of Labor has said. What matters in this case is that his tax forms are evidence of the actual investment that he made in his tools, which is one of the factors. Investment in the instrumentality of the tools is a factor of the six lords and factors that this court should determine and look at as a starting point in making a final determination in this case. Did you tell him what to wear? Sorry? Did you tell him what to wear? Your Honor, in terms of the office, he was known to wear clothes that employees could not wear and that were outside of the employee handbook, like shorts in the summertime, tennis shoes in the summertime. But you admitted in your brief that in the office he was instructed that this form of clothing was not acceptable. You just drew a distinction between on the job versus in the office. Well, let me clarify this point, because this is important. There is robust testimony in terms of declarations and depositions that plaintiff on many occasions wore a tank top while he was working. Now what he argues, and I think we finally come to agreement when you look at the reply brief, is that, to take a step back, he worked in a couple different places. Predominantly towards the end he worked at Ogden Manor. He also at times worked on the NSP properties, which you mentioned. There was also then DuPage Housing Authority's own headquarters, their office, where he occasionally, very rarely, but occasionally showed up to do some work there. It was only in that situation, in this professional office environment, where he was asked not to wear tank tops. This is a matter of decency, Your Honor. This is not a matter of having to maintain a employee uniform. We're not talking about something that is material. And again, this fact is not substantial or outcome determinative. Well, it's not really in your favor, though, is it? It does go in our favor, because I think it's consistent. What they asked him to do is consistent with what you would ask anybody to do, whether they were an employee or independent contractor. They show up at your office and they're wearing a tank top while everyone's in business professional attire. You do that a few times, it presents an awkward situation. I mean... I was stunned that you were saying that, actually. Are you aware we have a clothing requirement in this court? Yes, Your Honor. Could you show up in a tank top? I would not, Your Honor. We're glad you wouldn't, because we People have shown up in jumpsuits in the Troy District. Yeah, I carefully read, and again, there's a perfect example. I'm not an employee of this court, right? I read the description that said that we should wear charcoal or navy blue suits, and so I wore my navy blue suit. I'm not an employee, nor was plaintiff in this case, just because he was asked not to wear a tank top. But there is a factor about dress in general. So, are people expected to dress in a certain way? How about his gloves? Could you be more specific? Well, who owned them? Did he own them? His gloves. I don't know the answer to that off the top of my head, Your Honor. I could recite numerous tools that were his, that he used. All right, how about, let me, how about requiring particular kinds of gloves? There's nothing in the record that says that he was asked to use specific gloves, and I'm not sure whether he's admitted to having his own gloves. The point is that he had a number of aspects that made him look like an employee, right? But they are, they are shadowed significantly by the undisputed facts that show, that control a favored independent contractor status, and Your Honor, as I see that my time is up, we asked that this court... Answer the judge's question. Yes, so there, the, as the district court found, there was the control factor, which it weighed significantly, the investment instrumentalities, which we talked about in terms of its investment in some tools, coupled with the terms of the contract, and the fact that he was, and I didn't get to this, although it was in my original, my intent this morning, overpaid more, a higher hourly rate than any of the employees at Ogden Manor. All of these things, when you look at them, they just outweigh anything that would be a factor that would go towards employee status, and on that basis, we asked that this court affirm summary judgment for KJ. Thank you. All right, thank you very much. Anything further, Mr. Fisch? Very briefly, Your Honor. I want to clarify, we are asking that the court also